USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov. 19, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
REDF ORGANIC RECOVERY, LLC,          :
                                      :
                    Plaintiff,        :          **OPINION &**
                                      :          **ORDER**
     -against-                        :
                                      :          12 Civ. 7973 (JFK)
STEVE KAFIN and ORGANIC DYNAMICS, LLC :
                                      :
                    Defendants.       :
----------------------------------------X
**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiff REDF Organic Recovery, LLC's ("REDF" or "Plaintiff") application for a preliminary injunction requiring Defendant Steve Kafin ("Kafin" or "Defendant") to give power of attorney to REDF so that REDF can pursue a patent application currently pending before the U.S. Patent and Trademark Office ("PTO") but set to be deemed "abandoned" on November 23, 2012. Pursuant to an Order to Show Cause entered on October 26, 2012, Plaintiffs were also directed to show cause why the matter should not be referred to arbitration. The matter was heard on November 15, 2012. For the reasons that follow, the preliminary injunction is denied and the action is stayed pending arbitration.

## I. Background

REDF is a Delaware company with its principal place of business in Bernardsville, New Jersey. (Compl. ¶ 2.) Defendant Kafin is Managing Member of co-defendant Organic Dynamics.

Kafin is a resident of Miami Beach, Florida, and Organic Dynamics is a Florida company with a principal place of business in Miami Beach, Florida. (Compl. ¶¶ 3-4.)  Plaintiff proffers that venue in this Court is proper pursuant to a forum selection clause in a license agreement entered into by the parties (the "License Agreement"). (Compl. ¶ 6.)

The License Agreement between Organic Recovery and REDF provided REDF with a license for certain fertilizer technology owned by Organic Recovery.  Specifically, REDF acquired exclusive rights in New York and non-exclusive rights in the rest of the United States to technology and intellectual property used to convert food and other organic waste into liquid organic fertilizer.  REDF facilitates the purchase of the liquid organic fertilizer by commercial and organic farmers, as well as home gardeners. (Compl. ¶¶ 8-9.)  Under the License Agreement, Organic Recovery was required to pursue a patent for this technology.  Organic Recovery filed the patent application, and was awaiting response from the PTO as of March 29, 2009, when it filed for Chapter 7 bankruptcy in the Southern District of Florida.

As part of the bankruptcy proceeding, Kafin purchased Organic Recovery's assets, which included the technology that is the subject of the License Agreement.  Upon purchasing the technology, Kafin asserted that he was not bound by the License

2

Agreement with REDF, and the issue was litigated before the Florida bankruptcy court.  In December 2011, the Florida bankruptcy court found that the License Agreement is binding upon Kafin. (Compl. ¶¶ 9-10.)  Plaintiff contends that since Kafin is bound by the License Agreement, he must continue to pursue the patent application, and keep REDF apprised of his progress. (Compl. ¶¶ 12-15.)

In May, the PTO issued a "non-final" rejection of certain aspects of the patent application, and asked Kafin to respond within three months with more comprehensive information about the technology.  Because the PTO also gave a three-month grace period, the deadline for Kafin to respond is November 23, 2012. If he does not submit a reply by the deadline, the patent application will be deemed "abandoned." (Compl. ¶¶ 20-23.) Kafin informed REDF that he probably will not pursue the patent application, based upon advice from his patent attorney that the technology is likely not patentable. (Compl. ¶¶ 22-25.)

REDF contends that it has invested substantial amounts of money and effort in commercializing the technology, expecting that it would be patented.  REDF formed a "Joint Venture Sublicensee" named California Safe Soil ("CSS"), constructed a plant in West Sacramento, California, to test the technology, and explored contracts with supermarkets to advance the availability of this technology.  These steps were taken "as a

first step before proceeding with the construction and operation of larger, commercial-scale" facilities that use this technology. (Compl. ¶¶ 15-17). REDF represents that the patent application is of critical importance to the future viability of REDF and CSS. REDF further states that it is working with a patent attorney, who believes the technology is patentable, and has prepared a response to the PTO with the additional information it required.

## II. Discussion

The Court will first address the application for a preliminary injunction. Next, the Court will consider Defendant's motion to dismiss, which he filed on November 15, 2012. At oral argument that same day, Plaintiff stated that response papers were unnecessary, citing the time-sensitive nature of this dispute. Finally, the Court will consider the arbitrability of this dispute.

## A.   Preliminary Injunction

Preliminary injunctive relief is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985). Because it is such an extraordinary remedy, it should be granted only "when the intervention of a court of equity is essential to protect a party's property rights against injuries that would otherwise be irremediable." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68

(2d Cir. 1999).  Upon demonstration that legal remedies are inadequate to make a party whole, a movant may obtain injunctive relief upon the showing of:  "(1) irreparable harm or injury, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in favor of the movant." Earthweb Inc. v. Schlack, 71 F. Supp. 2d 299, 308 (S.D.N.Y. 1999).

Courts have long recognized that irreparable harm is the sine qua non of a preliminary injunction.  Demonstrating the mere possibility of harm is not sufficient to warrant the drastic imposition of a preliminary injunction.  Rather, the movant must present sufficient proof to provide a reasonable basis for believing that the injury is real and imminent. See Time Warner Cable, Inc. v. DirecTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007).

Plaintiff has failed to demonstrate irreparable harm primarily because the "abandonment" of a patent application is reversible, pursuant to federal regulation.  Under 37 C.F.R. § 1.137, which governs the PTO's standard for reviving a patent that has been deemed abandoned, "[r]evival of [an] abandoned application" is permitted where the applicant can show that the delay was either unavoidable or unintentional. See 37 C.F.R. § 1.137.  The application's abandonment will be deemed

5

unavoidable where the applicant can demonstrate that he exercised the care and diligence "generally used and observed by prudent and careful men in relation to their most important business." Kapusta v. Gale Corp., 457 F. Supp. 2d 1051, 1067 (E.D. Cal. 2006).

In the Court's view, Kafin's abandonment of this patent would fall squarely within the definition of "unavoidable," as applied against REDF. REDF has taken every step possible to avoid abandonment of this application, yet has been unable to do so. Its diligence in trying to avoid the lapse of the PTO's deadline is evidenced by the litigation it has pursued in both Florida and New York, and by the fact that it has employed a patent lawyer and has a response already prepared for the PTO. Should Plaintiff assume control of the patent application, the Court is confident that the PTO will permit the application to be revived.

In Futures Technology, Ltd. v. Quigg, 684 F. Supp. 430 (E. D. Va. 1988), plaintiff entered into a contract with Enertronics in 1982, which called for Enertronics to develop inventions and file the corresponding patent applications. According to the contract, Enertronics was to hold any patents it obtained in a fiduciary capacity for plaintiff, and plaintiff was to be the equitable owner of the inventions and patent applications. Id. at 430. After a dispute between the parties regarding

6

Enertronics' dubious diligence in pursuing one of the patent applications, plaintiff assumed control of that application, which had already been deemed abandoned.  The court ruled that plaintiff, as equitable owner, had a right to rely on Enertronics' performance under the contract and that plaintiff had exercised diligence by inquiring about the status and was given assurances by Enertronics that work was being done on the application, when in fact, the work was not being done. Id. at 431.  The case at bar presents a similar situation.  If REDF is permitted to assume control of the patent application, its petition for revival would reflect that it (1) was diligent in inquiring about the status of the application, (2) pursued every avenue in an attempt to avoid lapse of the PTO's deadline, and (3) was denied the power to intervene when it appeared that Kafin would not prosecute the patent.  This evidence should be more than sufficient for the PTO to permit revival of the application.

     Plaintiff's assertion of irreparable harm also fails because it is speculative.  As discussed above, Plaintiff can only speculate that the PTO will deny a request to revive the patent.  Moreover, even if REDF were to assume the application, the patent may nonetheless be denied. Therefore, Plaintiff has not met the high burden of proving "actual" harm absent a preliminary injunction. See Grand River Enter. Six Nations, Ltd.

v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) ("To satisfy the
irreparable harm requirement, [p]laintiffs must demonstrate that
absent a preliminary injunction they will suffer an injury that
is neither remote nor speculative, but actual and imminent, and
one that cannot be remedied if a court waits until the end of
trial to resolve the harm.").

### B.   Motion to Dismiss

Defendant has also filed a motion to dismiss, for (1) lack
of personal jurisdiction, (2) forum non conveniens, and (3)
failure to state a cause of action.  This motion is dismissed
for the reasons stated below.

The first two bases for dismissal are meritless in light of
the forum selection clause in the License Agreement. (Goldstein
Letter, Exh. F at 29-30 ("Legal proceedings commenced by any
party arising hereunder shall be brought exclusively in the
courts sitting in New York.  Each Party irrevocably and
unconditionally submits to the jurisdiction of such courts.").)
Where a contract contains a forum selection clause, a party to
that contract may not litigate forum or venue.  See D.H. Blair &
Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006)
("Parties can consent to personal jurisdiction through forum-
selection clauses in contractual agreements."), Nat'l Equip.
Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("And it
is settled . . . that parties to a contract may agree in advance

to submit to the jurisdiction of a given court."); see also Med. Devel. Mgmt., Inc. v. New You Publ., LLC, 11 Civ. 8438, 2012 WL 4459909 at *4 (S.D.N.Y. Sept. 25, 2012) ("It simply defies logic that it would be inconvenient for the parties to adjudicate the 2010 Agreement claims in New York, when the parties, by virtue of their own mandatory forum selection clause, must litigate the Loan Agreement claims here.").

Next, Defendant's 12(b)(6) motion is meritless because Plaintiff has adequately stated its claim for breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff has alleged that (1) the License Agreement is binding upon both parties, (2) Kafin has failed to provide the PTO with the information it requested or keep Plaintiff apprised of the status of the application, and (3) such action was required under the License Agreement.  These allegations, taken as true, would establish that Kafin breached the License Agreement.

## C.    Arbitration

Plaintiff does not dispute that the License Agreement contains a valid arbitration clause, but rather contends that Defendant has waived his right to enforce the arbitration provision by submitting to litigation in Florida two and a half years ago.

The right to arbitrate is "an affirmative defense that is waived where the party seeking to raise the defense engages in

protracted litigation that results in prejudice to the opposing party." Brookridge Funding Corp. v. Nw. Human Res., Inc., 170 F. App'x 170, 171 (2d Cir. 2006).  "Waiver of arbitration is not to be lightly inferred." La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 626 F.3d 156, 161 (2d Cir. 2010) (quoting PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.2d 103, 107 (2d Cir. 1997)).  In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, the Court considers three factors:  "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." La. Stadium & Exposition Dist., 626 F.3d at 159.  "Prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in the waiver of the right to arbitrate." Doctors Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir. 1997).  There is no "rigid formula" or "bright-line rule" for identifying when a party has waived its right to arbitration; rather, "the above factors must be applied to the specific context of each particular case." La. Stadium & Exposition Dist., 626 F.3d at 159.

Plaintiff argues that Defendant took affirmative steps against asserting the right to arbitrate through his participation in the Florida litigation.  According to

10

Plaintiff, over the last two and a half years, Defendant participated in depositions, document productions, summary judgment motions, and a trial related to Defendant's substantive claims as to the enforceability of the License Agreement.

As Judge McMahon noted, and this Court agrees, Defendant's participation in the Florida litigation does not amount to a waiver of arbitration.  "The dispute here in issue is an alleged breach of the License Agreement, while the prior litigation between the parties involved whether the License Agreement was valid and binding.  Those are two different disputes, and it appears to this court that as soon as the breach of Agreement was raised with a court, defendants asserted their right to arbitration." (Scheduling Order ¶ 2.)  Indeed, Defendant's invocation of the arbitration clause at this stage of the proceeding is perfectly reasonable.  The issues before the Florida court involved whether Defendant Kafin was subject to the License Agreement.  It would have been nonsensical – and detrimental to his position – for Kafin to invoke the arbitration clause of an agreement to which he did not believe he was a party.

Next, the Court will consider whether Plaintiff has been prejudiced by the fact that Kafin did not assert his right to arbitrate until now.  Prejudice "can be substantive, such as when a party loses a motion on the merits and then attempts, in

11

effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991).  "Such prejudice has been found where a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." 170 F. App'x at 171.

As discussed above, Kafin invoked his right to arbitration as soon as the Florida court determined that he was a party to the License Agreement.  Therefore, Defendant cannot be accused of causing Plaintiff to incur unnecessary delay.  In addition, Plaintiff's breach of contract claim against Defendant has not yet been litigated.  As a result, Plaintiff cannot maintain that Defendant is attempting to relitigate any issue through arbitration.

Given the unambiguous arbitration clause contained in the License Agreement, (Goldstein Letter, Exh. F at 29-30 ("The Parties agree that . . . each of them shall make bona fide efforts to resolve any dispute . . . in accordance with binding arbitration.")), the Court cannot contravene the parties' contractual rights absent clear evidence that the right has been

waived.   Plaintiff has failed to demonstrate that Kafin was unreasonable in waiting to assert his right to arbitration. Additionally, Plaintiff has not shown that it would suffer any prejudice if this dispute were sent to arbitration.   Therefore, the agreed-upon arbitration clause must be upheld.

### III. Conclusion

For the foregoing reasons, Plaintiff's application for a preliminary injunction is denied, Defendant's motion to dismiss is denied, and the action is stayed pending arbitration.

**SO ORDERED.**

Dated:   New York, New York
         November *19*, 2012

                                    JOHN F. KEENAN
                           United States District Judge